United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY SHIVELY, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARRIER IQ, INC., *et al.*,<br><br>Defendants.<br>_____/ | Case No. C-12-0290 EMC<br><br>Related Case C-11-5774 EMC<br><br>MDL Case No. C-12-md-2330 EMC, *In Re Carrier IQ, Inc.*<br><br>**ORDER RE PLAINTIFF SHIVELY'S MOTION TO REMAND**<br><br>**(Docket No. 10)** |

Plaintiff Rodney Shively initiated this lawsuit against Defendant Carrier IQ, Inc. in state court. In his complaint, Mr. Shively asserted claims under state law only, including the California Invasion of Privacy Act ("CIPA"). *See* Cal. Pen. Code §§ 631, 637.2. Carrier IQ subsequently removed the action to federal court on the ground that the CIPA claims are completely preempted by the Federal Wiretap Act (also known as Title III of the Omnibus Crime Control and Safe Streets Act

///
///
///
///
///
///
///
///

of 1968), as amended by the Electronic Communications Privacy Act of 1986 ("ECPA").[1]  Currently pending before the Court is Mr. Shively's motion to remand.

## I. FACTUAL & PROCEDURAL BACKGROUND

Mr. Shively filed suit against Carrier IQ, claiming that the company developed, sold, and distributed a software program that secretly tracks, records, and distributes a smartphone customer's private information (*e.g.*, location data, keystrokes, contacts, passwords) without his or her consent. Based on this allegation, Mr. Shively has asserted various state law claims for relief, including one for violation of CIPA. Under CIPA, one may be held civilly liable if he or she

> intentionally taps, or makes any unauthorized connection, . . . with any telegraph or telephone wire, line, cable, or instrument, . . . or willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or . . . uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above . . . .

Cal. Pen. Code § 631; *see also id.* § 632.7 (providing for civil liability).

Although Mr. Shively pled only state law claims in his complaint, Carrier IQ nonetheless removed the lawsuit to federal court, arguing that the CIPA claims asserted are completely preempted by the Federal Wiretap Act. Mr. Shively now moves to remand on the basis that there is no complete preemption.

///

///

---

[1] Congress authorized government interception "under carefully circumscribed circumstances in title III of the Omnibus Crime Control and Safe Streets Act of 1968." S. Rep. 99-541, at 3556 (1986). But Title III became out of date because "[i]ts regimen for protecting the privacy of voice communications is expressly limited to the unauthorized aural interception of wire or oral communications," "[i]t only applies where the contents of a communication can be overheard and understood by the human ear," and it "applies only to interceptions of communications sent via common carriers." *Id.* Thus, in 1986, Congress passed the ECPA, which amended the federal wiretap law "to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." *Id.* at 3555.

2

## II. DISCUSSION

A.     Legal Standard

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. *See* 28 U.S.C. § 1441(a).

> However, [i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction. The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court.

*Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (internal quotation marks omitted).

B.     Complete Preemption

There is no dispute that, in his complaint, Mr. Shively has asserted only state law claims for relief. But

> [t]he jurisdictional doctrine of complete preemption serves as an exception to the well-pleaded complaint rule. It provides that, in some instances, "the preemptive force of [federal statutes] is so strong that they completely preempt an area of state law. In such instances, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." "[C]omplete preemption occurs only when Congress intends not merely to preempt a certain amount of state law, but also intends to transfer jurisdiction of the subject matter from state to federal court."

*Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861-62 (9th Cir. 2003); *see also K2 Am. Corp. v. Roland Oil & Gas*, 653 F.3d 1024, 1029 n.6 (9th Cir. 2011) (noting that "'[t]he general rule is that a defense of federal preemption of a state-law claim, even conflict preemption under [a federal statute], is an insufficient basis for original federal question jurisdiction under § 1331(a) and removal jurisdiction under § 1441(a)'"). The Ninth Circuit has emphasized that "[c]omplete preemption . . . arises only in 'extraordinary' situations. 'The test is whether Congress *clearly manifested* an intent to convert state law claims into federal-question claims.'" *Ansley*, 340 F.3d at 862 (emphasis added).

3

In its papers, Carrier IQ argues that Congress has explicitly expressed an intent to preclude state laws from regulating in this field and state courts from adjudicating such matters in 18 U.S.C. § 2518(10)(c), a provision of the Federal Wiretap Act that was added in 1986 when the Act was amended by the ECPA. Carrier IQ further argues that such an intent may be inferred because the Federal Wiretap Act has a detailed regulatory scheme which implicitly leaves no room for supplementary state regulation. *See generally Jacobs v. ABN-Amro Bank N.V.*, No. 03-CV-4125 (NGG), 2004 U.S. Dist. LEXIS 6888, at *9-10 (E.D.N.Y. April 21, 2004) (noting that there is complete preemption "(1) when Congress explicitly provides that a certain kind of claim may only be litigated in federal court, even if the claim is made under state law" or "(2) when the Supreme Court determines that in enacting a federal law Congress implicitly intended the statute to have the effect of 'not only preempting state law but also authorizing removal of actions that sought relief only under state law'"). Each argument, addressed below, is problematic.

C. <u>Express Complete Preemption</u>

Carrier IQ takes the position that Congress expressly provided for complete preemption of state law claims in 18 U.S.C. § 2518 – more specifically, subsection (10)(c). Section 2518 is titled "Procedure for interception of wire, oral, or electronic communications." Subsections (1)-(9) basically deal with law enforcement applications for orders authorizing interception of wire, oral, or electronic communications and orders authorizing such. Subsection (10) goes on to provide in as follows:

> (a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter [18 U.S.C. §§ 2510 *et seq.*], or evidence derived therefrom, on the grounds that –
>
> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.
>
> . . . .

4

    (b)    In addition to any other right to appeal, the United States shall have the right to appeal from an order granting a motion to suppress made under paragraph (a) of this subsection, or the denial of an application for an order of approval, if the United States attorney shall certify to the judge or other official granting such motion or denying such application that the appeal is not taken for purposes of delay. . . .

    (c)    *The remedies and sanctions described in this chapter [18 U.S.C. §§ 2510 et seq.] with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.*

18 U.S.C. § 2518(10) (emphasis added). Carrier IQ relies upon subsection (10)(c) – the language italicized above – in support of its express preemption argument.

       The Court finds Carrier IQ's argument unconvincing. First, the plain language of § 2518(10)(c) simply states that a violation of the chapter has limited remedies and sanctions. That does not mean that violations of *other* laws (such as the CIPA) cannot provide for *other* remedies and sanctions. Congress easily have said that the remedies and sanctions provided for are the only remedies for *an interception of electronic communications*, but it did not do so.

       Second, taking § 2518(10)(c) into context weighs against inferring complete preemption. Rather than standing alone as a clear preemption provision, *compare* 12 C.F.R. § 560.2(a) (HOLA regulation addressing only preemption), the relevant provision is buried as a subsection of § 2518; § 2518 has nothing to do with preemption. As discussed above, subsections (1) through (9) of § 2518 essentially deal with law enforcement applications for orders authorizing interception of wire, oral, or electronic communications and judicial orders authorizing such. Not only do these topics have nothing to do with preemption, § 2518 does not even address private, non-law enforcement applications to intercept communications. Moreover, subsections (10)(a) and (b) which precede (10)(c) concern motions to suppress intercepted communications. In this context, it would make little sense for subsection (10)(c) to be treated as a complete preemption provision applicable to all state law claims (including those involving private parties only).

       At the very least, the above establishes that there is ambiguity as to whether § 2518(10)(c) effectuates complete preemption and, therefore, it is appropriate for the Court to consider the legislative history behind the statute. That history underscores that subsection (10)(c) is not a

complete preemption provision but rather was intended to insure that interception of electronic communications (in contrast to oral and wire communications) are not subject to the exclusionary rule absent a Fourth Amendment violation. The Senate Report for the 1986 amendment states:

> Subsection 101(e) of the Electronic Communications Privacy Act amends subsection 2518(10) of title 18 to add a paragraph (c) which provides that with respect to the interception of electronic communications, the remedies and sanctions described in this chapter are the only judicial remedies and sanctions available for nonconstitutional violations of this chapter involving such communications. In the event that there is a violation of law of a constitutional magnitude, the court involved in a subsequent trial will apply the existing Constitutional law with respect to the exclusionary rule.
>
> *The purpose of this provision is to underscore that, as a result of discussions with the Justice Department, the Electronic Communications Privacy Act does not apply the statutory exclusionary rule contained in title III of the Omnibus Crime Control and Safe Streets Act of 1968 [*i.e., *the Federal Wiretap Act] to the interception of electronic communications.*

S. Rep. No. 99-541, at 3577 (1986) (emphasis added).

The statutory exclusionary rule in Title III is 18 U.S.C. § 2515. *See Cruz v. Alexander*, 669 F.2d 872, 874 (2d Cir. 1982) (stating that, "[i]n addition to its substantive provisions, Title III includes an implementing exclusionary rule, 18 U.S.C. § 2515, which bars from federal and state courts conversations intercepted by unauthorized wiretapping and evidence derived from such wiretapping"). Section 2515 provides:

> Whenever any *wire or oral* communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter [18 U.S.C. §§ 2510 *et seq.*].

15 U.S.C. § 2515 (emphasis added). Section 2515 on its face provides for an exclusionary rule for wire or oral communications only; it does *not* mention *electronic communications*. *See, e.g.*, *United States v. Steiger*, 318 F.3d 1039, 1051-52 (11th Cir. 2003) (discussing §§ 2515 and 2518(10)(c)). Section 2518(10)(c) was intended to preserve that distinction. *See* C. Fishman & A. McKenna. Wiretapping and Eavesdropping § 34:8 (2011) (§ 2518 (10)(c) establishes that a violation of Title III

6

with regard to electronic communications may not provide basis to suppress evidence in a criminal prosecution absent application of Fourth Amendment exclusionary rule).

Carrier IQ does have authority supporting its position that § 2518(10)(c) is a complete provision preemption. *See Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1154-55 (C.D. Cal. 2007) (concluding that § 2518(10)(c) is a complete preemption provision); *cf. Quon v. Arch Wireless Operating Co., Inc.*, 445 F. Supp. 2d 1116, 1138 (C.D. Cal. 2006) (concluding that 18 U.S.C. § 2708, which is a part of the Stored Communications Act and which similarly provides that "[t]he remedies and sanctions described in this chapter [18 U.S.C. § 2701 et seq.] are the only judicial remedies and sanctions for nonconstitutional violations of this chapter," is a complete preemption provision), *rev'd on other grounds*, 529 F.3d 892 (9th Cir. 2008). However, *Bunnell* is fundamentally flawed because it fails to take into account the legislative history above. Nor does it account for the language and context of § 2518(10)(c).

Moreover, a number of other courts have held that § 2518(10)(c) is not a complete preemption provision. *See Leong v. Carrier IQ, Inc.*, Nos. CV 12-01562 GAF (MRWx), CV 12-01564 GAF (MRWx), 2012 U.S. Dist. LEXIS 59480, at *11 (C.D. Cal. Apr. 27, 2012) (agreeing with other courts that § 2518(10)(c), "which appears as a subsection of a provision addressing suppression of wiretap evidence obtained in violation of the Act, neither (1) explicitly provides for the preemption of state law; nor (2) applies outside the suppression context")[2]; *In re Google Inc. Street View Elec. Comm'ns Litig.*, 794 F. Supp. 2d 1067, 1085 n.12 (N.D. Cal. 2011) (Ware, J.) (rejecting defendant's argument that § 2518(10)(c) is a complete preemption provision because "[t]he legislative history supports the proposition that the provision was appended to the ECPA solely to address suppression of evidence by criminal defendants"); *In re NSA Telcomms. Records Litig.*, 483 F. Supp. 2d 934, 939 (N.D. Cal. 2007) (Walker, J.) (agreeing with plaintiffs that §§ 2518(10)(c) and 2708 have a "limited purpose: to prevent criminal defendants from suppressing

---

[2] There is a motion for leave to file an amicus brief based on the *Leong* decision. Carrier IQ has opposed the motion. The motion is denied as moot given that Mr. Shively mentioned the *Leong* decision at a prior case management conference and further provided a statement of recent decision to the Court about the *Leong* decision.

7

evidence based on electronic communications or customer records obtained in violation of ECPA's provisions"). This Court agrees with those decisions.

D. <u>Implied Complete Preemption</u>

Carrier IQ argues that, even if there is no express complete preemption, there is implied complete preemption because the "detailed regulatory scheme of the Wiretap Act . . . leaves no room for supplementary state regulation." Opp'n at 7. In short, Carrier IQ is making an implied field preemption argument.

As a starting point, the Court takes into account that the Supreme Court has "determined that there are only three statutory schemes that completely occupy the field [as a matter of implication]: cases arising under the Labor Management Act and ERISA and usury claims under the National Bank Act." *Animal Prot. & Rescue League v. California*, No. 07cv2320 JM(AJB), 2008 U.S. Dist. LEXIS 8030, at *9 (S.D. Cal. Feb. 4, 2008); *see also Ansley*, 340 F.3d at 862 (noting the same). This is not surprising given that

> [p]reemption analysis starts with the presumption that the traditional police powers of states are not displaced by federal law unless displacement was the "*clear and manifest purpose of Congress*." "Federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons – *either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained*."

*Chemical Specialties Mfrs. Ass'n v. Allenby*, 958 F.2d 941, 943 (9th Cir. 1992) (emphasis added).

Against this backdrop, a few courts have found in favor of implied field preemption with respect to the Federal Wiretap Act. In *Bunnell*, the district court concluded that Congress left no room for supplementary state regulation because "[t]he scheme of the ECPA is very comprehensive: it regulates private parties' conduct, law enforcement conduct, outlines a scheme covering both types of conduct and also includes a private right of action for violation of the statute." *Bunnell*, 567 F. Supp. 2d at 1154. In *Google*, Judge Ware of this district also found that there was implied field preemption, explaining as follows:

> [T]he ECPA was enacted, in part, to provide legal certainty to users and developers of innovative communications technologies with bright line rules for liability. In so regulating, Congress struck a balance

8

between the right to the privacy of one's electronic communications against the ability of users to access communications technologies without fear of liability for inadvertent interception. State regulation acting in addition to the ECPA might serve to obscure the legislative scheme surrounding innovative communications technologies that Congress intended to clarify through the Act, or could serve to upset the fragile balance considered by Congress between those who transmit electronic communications and those who may inadvertently intercept those communications. Further, the statute provides for criminal penalties, as well as a civil right of action for violation of its provisions, such that the statute provides broad protections for interceptions under the Act.

*Google*, 794 F. Supp. 2d at 1085.

Other courts, however, have reached the opposite conclusion from *Bunnell* and *Google*. For instance, in *Leong*, the district court held that "the Federal Wiretap Act 'was not an attempt to occupy the field, but merely an attempt to establish minimum standards.'" *Leong*, 2012 U.S. Dist. LEXIS 59480, at *7. In support of this holding, the court referenced first the 1968 Senate Report for the Act, more specifically that part of the report which addressed 18 U.S.C. § 2516(2).

> Paragraph (2) provides that the principal prosecuting attorney of any State or the principal prosecuting attorney of any political subdivision of a State may authorize an application to a State judge of competent jurisdiction, as defined in section 2510(9), for an order authorizing the interception of wire or oral communications. . . .
>
> No applications [for interception pursuant to § 2516(2)] may be authorized unless a specific State statute permits it. The State statute must meet the minimum standards reflected as a whole in the proposed chapter. *The proposed provision envisions that States would be free to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation.*

S. Rep. No. 90-1097, at 2187 (1968) (emphasis added).

The *Leong* court also referenced another part of the Senate Report which addressed 18 U.S.C. § 2520:

> Section 2520 of the new chapter authorizes the recovery of civil damages. It provides that any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall have a civil cause of action against any person, as defined in section 2510(6), discussed above, who intercepts, discloses or uses or procures any other person to intercept disclose or use such communication. *The scope of the remedy is intended to be both comprehensive and exclusive, but there is no intent to preempt parallel State law.*

9

*Id.* at 2196 (emphasis added).

Finally, acknowledging that the Federal Wiretap Act had been amended in 1986, the court in *Leong* went on to identify legislative history from 1986 that also supported a lack of complete preemption. In particular, the court pointed to § 111 of the Electronic Communications Privacy Act, which set up the effective date for the Act. The 1986 Senate Report stated the following regarding § 111:

> Subsection (a) provides that in general the amendments made by this act are effective 90 days after enactment, and that the act applies only with respect to court orders or extensions made after the effective date. . . .
>
> Subsection (b) provides a special rule for the effective date in the case of state authorizations of interceptions. This special effective date rule is necessary because the provisions of chapter 119 of title 18 supersede state laws with respect to electronic communications. Under chapter 119, the states must enact statutes which are *at least as restrictive* as the provisions of chapter 119 before they can authorize their state courts to issue interception orders. Because of the substantial changes made this act it is appropriate to grant the states sufficient time to modify their laws. . . .

S. Rep. 99-541, at 3589 (1986) (emphasis added); *see also* H.R. Rep. 99-647, at 61 (noting the same). Based on the italicized language above, the court concluded that, "'rather than leaving no room for supplementary state regulation, Congress expressly authorized states to legislate in this field. Congress apparently wanted to ensure that states meet base-line standards, however, and thus federal law supersedes to the extent that state laws offer less protection than their federal counterparts.'" *Leong*, 2012 U.S. Dist. LEXIS at *9-10 (quoting *Lane v. CBS Broadcasting, Inc.*, 612 F. Supp. 2d 623, 637 (E.D. Pa. 2009)).

In *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022 (N.D. Cal. 2011), Judge Henderson also rejected implied field preemption, relying in large part on two cases issued by the California Supreme Court, namely, *People v. Conklin*, 12 Cal. 3d 259 (1974), and *Kearney v. Solomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006). In *Kearney*, the California Supreme noted:

> In *People v. Conklin*, this court specifically addressed the question whether the provisions of title III of the federal Omnibus Crime Control and Safe Streets Act of 1986 – relating to the wiretapping or recording of telephone conversations – preempted the application of the more stringent provisions embodied in California's

10

> invasion-of-privacy law. Reviewing the legislative history of title III, the court in *Conklin* determined that "Congress intended that the states be allowed to enact more restrictive laws designed to protect the right of privacy," pointing out that a legislative committee report prepared in conjunction with the consideration of title III specifically observed that "'[t]he proposed provision envisions that States would be free to adopt *more restrictive* legislation, or no legislation at all, but not less restrictive legislation.'" Accordingly, the court in *Conklin* rejected the preemption claim.
>
> . . . . [There are no] developments in the almost four decades since *Conklin* that would warrant . . . reconsideration, and . . . numerous sister-state and federal decisions . . . have reached the same conclusion as *Conklin* with regard to the preemption issue.

*Id.* at 105-06 (emphasis in original).

The Court finds *Leong* and *Valentine* to be more persuasive than *Bunnell* and *Google*, particularly because the latter cases do not address the legislative history referenced by the courts in the former cases and because complete preemption is a rarity that "arises only in 'extraordinary' situations," *Ansley*, 340 F.3d at 862 – *i.e.*, it occurs only where "Congress has *unmistakably* so ordained." *Chemical Specialties Mfrs. Ass'n*, 958 F.2d at 943 (emphasis added). The Court respectfully disagrees with Judge Ware that the Federal Wiretap Act, as amended by the ECPA, reflects a preemptive balancing by Congress "between the right to the privacy of one's electronic communications against the ability of users to access communications technologies without fear of liability for inadvertent interception." *Google*, 794 F. Supp. 2d at 1085. That balance is only one narrow aspect of the Act. The bulk of the Act focuses on *law enforcement* powers and *court authorization* of interceptions with only a few limited provisions addressing the rights and liabilities between private parties. *See, e.g.*, 18 U.S.C. § 2511(2)(g)(i) (providing that it shall not be unlawful for a person "to intercept or access an electronic communication made through an electronic communication system that is configured so that such electronic communication is readily accessible to the general public"); 18 U.S.C. § 2520 (authorizing a private cause of action for interception). Indeed, the Senate Report explains that the overarching purpose of ECPA was to strike "a fair balance between the privacy expectations of American citizens and the legitimate needs of *law enforcement agencies*." S. Rep. No. 99-541, at 3555(a) (emphasis added). That purpose does not

11

require broad and complete preemption of state law, including state laws which regulate private conduct.

Thus, the degree of comprehensive federal regulation necessary to infer Congress's intent to occupy the field affecting even purely private conduct is absent here. That the Federal Wiretap Act includes a singular provision authorizing a private remedy for interception of electronic communication in violation of its provisions does not imply that Congress meant to oust all state law protections that provide parallel and remedies. Such an inference is particularly unwarranted where privacy interests at issue are "deeply rooted in local feeling and responsibility." *Farmer v. United Brotherhood of Carpenters & Joiners*, 430 U.S. 290, 296-97 (1977) (noting that "[w]e have refused to apply the pre-emption doctrine to activity that otherwise would fall within the scope of *Garmon* if that activity 'was a merely peripheral concern of the Labor Management Relations Act… [or] touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act'"). Privacy rights of private citizens are rooted in common law. *See generally* Samuel D. Warren & Louis D. Brandeis, "The Right to Privacy," 4 Harv. L. Rev. 193 (1890). In California, privacy rights are not only additionally codified in *e.g.*, the CIPA, but privacy rights against both governmental and non-governmental intrusions are afforded protection under the state constitution (Article I, § 1). *See, e.g., Sheehan v. San Francisco 49ers, Ltd.*, 45 Cal. 4th 992 (2009).

Carrier IQ criticizes the reasoning of the courts in *Leong* and *Valentine*. For example, Carrier IQ argues against the *Leong* court's reliance on the 1986 Senate Report, more specifically, that part of the report which discusses § 111 of the Electronic Communications Privacy Act. Carrier IQ seems to argue that, under the report, state law claims of interception are preempted; there is simply an exception when it comes to law enforcement where state law standards may exceed (but may not fall below) federal law standards. *See* Opp'n at 9 (arguing that "*Lane* [and implicitly *Leong*, which relied upon *Lane*] incorrectly expanded the portion of the Senate Report discussing the provisions of Section 111 to apply to the entire statute when they clearly apply only to a narrow provision of the Wiretap Act related to law enforcement"). But Carrier IQ's argument fails to take into account the 1968 Senate Report which specifically states that, while the Federal Wiretap Act

creates a civil remedy under federal law for interceptions (under 18 U.S.C. § 2520), it does not preempt parallel state law. While Carrier IQ might argue that the 1968 report should be given less weight because the Federal Wiretap Act was amended in 1986 with the Electronic Communications Privacy Act, Carrier IQ does not point to any changes to the statute establishing a clear intent by Congress to depart from the earlier established starting point of no preemption. There is nothing in the 1986 Senate Report which suggests that material changes were made to § 2520 (which provides for a civil remedy) which would imply complete preemption. *See* S. Rep. 99-541, at 3580-81 (discussing amendments to § 2520); H.R. Rep. 99-647, at 50 (discussing the same).

Carrier IQ also challenges the conclusions of Judge Henderson in *Valentine*, arguing for example that the case should be given little weight because it relied on the California Supreme Court's decision in *Conklin*, which was issued in the 1970s *before* the enactment of § 2510(10)(c). However, as discussed above, § 2510(10)(c) is not an express complete preemption provision. Moreover, Judge Henderson did not rely on *Conklin* alone but also *Kearney*, a decision that came out after the ECPA amended the Federal Wiretap Act.

Finally, to the extent Carrier IQ argues that the legislative history weighs in its favor, that argument is without merit. In its opposition, Carrier IQ points out that, when the Federal Wiretap Act was enacted in 1968, congressional findings were made, one of which was as follows:

> (b) In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce, it is necessary for Congress to define on a *uniform basis* the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interceptions of such communications, and the use of the contends thereof in evidence in courts and administrative proceedings.

Pub. L. No. 90-351 (Title III, § 801(b)) (emphasis added). But, as discussed above, the 1968 Senate Report specifically expresses the intent not to preempt. Moreover, the California Supreme Court in *Conklin* provides a persuasive analysis that, "in referring to a need for uniform nationwide standards, it appears that Congress was not expressing an intent to preempt the entire field; rather, it was emphasizing the need to ensure nationwide compliance with the newly declared standards in *Berger*

13

and *Katz* [which basically held that a physical trespass was not required for there to be a violation of the Fourth Amendment]." *Conklin*, 12 Cal. 3d at 269.

### III. CONCLUSION

At bottom, Carrier IQ's assertion of complete preemption is sweeping. Under its interpretation of Title III as amended by the ECPA, states would be completely ousted from regulating the interception of electronic communications. Such a sweeping intrusion into the power of states to protect privacy rights cannot be implied absent the clearest of congressional intent. The ECPA provides no such basis.

For the foregoing reasons, the Court concludes that there is no complete preemption, either express or implied. Therefore, Mr. Shively's motion to remand is granted.

This order disposes of Docket No. 10.

IT IS SO ORDERED.

Dated: July 24, 2012

_____
EDWARD M. CHEN
United States District Judge